**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARL S. ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>BUREAU OF HEALTH CARE SERVICES, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 1:20-CV-2406<br><br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

**MEMORANDUM**

Carl Robinson, a self-represented individual incarcerated at the Mahanoy State Correctional Institution ("SCI-Mahanoy"), in Frackville, Pennsylvania, has filed a motion for a temporary restraining order seeking only to be fed "a gluten free diet" and "to be properly screened for and treated for any ailments caused by a non gluten diet." (Doc. 19, p. 2.)[1] Both sets of Defendants[2] oppose the motion. (Docs. 22, 23.) Robinson did not file a reply brief in support of his motion. Because Robinson cannot demonstrate a likelihood of success on the merits of this Eighth Amendment medical claim related to his need for a gluten free diet or that

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] Named as Defendants are the following Pennsylvania Department of Corrections ("DOC") SCI-Mahanoy employees: Superintendent Mason, Deputy Superintendent White, Corrections Health Care Administrator ("CHCA") Steinhart, C. Ritsko, and C. Stanitis. Correct Care Solutions, LLC ("CCS") the contract medical care provider at SCI-Mahanoy, Physician Assistant ("PA") Jenna Williams, and Dr. Baddick are also named as Defendants. The DOC Defendants and CCS Defendants are represented by separate counsel.

he will suffer irreparable harm if the injunction is denied, the court will deny the motion for injunctive relief.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Robinson is a diabetic and suffers from high blood pressure and cholesterol. (*Id.*, ¶ 22.) On June 26, 2020, Dr. Baddick saw Robinson while making rounds in the Restricted Housing Unit ("RHU"). (Doc. 1-1, p. 9.) Robinson requested a blood test to determine if he had a gluten sensitivity. (*Id.*) Dr. Baddick ordered the lab work, and it was performed a week later. (Doc. 1, ¶¶ 24–27.) On September 17, 2020, PA-C Williams advised Plaintiff that his test results were "negative." (*Id.*, ¶ 29.) Robinson alleges that Defendants' refusal to prescribe or provide him a "no animal product diet" and "gluten free diet" demonstrates their deliberate indifference to his "autoimmune disease called 'gluten sensitive enteropathy'" or celiac disease. (Doc. 1., p. 7.) Robinson alleges he is experiencing pain, problems moving his bowels, low oxygen in his blood, fatigue and "difficulties with [his] feet" due to Defendants' failure to provide him a gluten free diet. In his motion for a temporary restraining order, Robinson claims "he has been denied care for a serious medical need contrary to a physician's instruction." (Doc. 21, p. 2.) Robinson does not provide any medical documentation in support of his claim that he suffers from a medical condition that requires he maintain a gluten free diet or that any physician prescribed him such a diet.

In support of their opposition to Robinson's motion, Defendants provide the following documentary evidence for the court's consideration: portions of Robinson's medical records, commissary purchases, and a grievance related to his request for a gluten free diet.[3] *See* Docs. 23-2, 23-3, 23-4, 23-5, 23-6, 23-7, and 23-8. Plaintiff undergoes routine blood glucose tests which measure the amount of glucose in the patient's blood on the date the blood is drawn. (Doc. 23-3, pp. 5–19.) He also received periodic Hemoglobin A1C blood tests that measure a patient's average blood sugar levels over the past 3 months. (*Id*., pp. 3–4.) Robinson's 2020 commissary purchases reveal his purchase of gluten-laden foods such as tortillas, tortilla chips, pretzels, peanut butter cookies, Raisin Bran, and Ramen Noodle soups. Notably, Robinson did not have access to such items while in the RHU from May to December 2020. (Doc. 23-7.) Records also reveal that Robinson's compliance with his Metformin diabetes medication was poor between May and December 2020, averaging 22.1% per month. (Doc. 23-6.)

On March 11, 2020, PA-C Williams noted Robinson's blood sugar and Hemoglobin A1C were consistently high. PA-C Williams advised Robinson of the possible need to resume using insulin if his blood sugar levels remained elevated. Robinson stated he "was trying to watch what [he is] eating and doing." (Doc. 23-

[3] Robinson did not file a reply in support of his motion for injunctive relief. Thus, the court views Robinson as not contesting the authenticity of the submitted documentation.

3, p. 7; Doc. 23-5, p. 20.) Robinson advised that he did not wish to be on insulin, and if prescribed, he would not take it. (Doc. 23-5, p. 20.) Robinson's commissary purchases between January and March 2020 include the purchase of many items containing gluten. (Doc. 23-7.) On March 21, 2020, due to persistent high glucose levels, and poor medication compliance, Robinson's Metformin was changed to Direct Observation Therapy, which required him to come to the pill line to receive his medication. On March 30, 2020, PA-C Williams saw Robinson at sick call. He sought fiber supplements to assist him moving his bowels and something for his cough. PA-C Williams ordered the requested medication. Robinson was seen by medical staff three additional times in April 2020, during which visits Robinson refused to have his blood glucose levels checked. (Doc. 23-5, pp. 55–59.) Robinson's April 2020 commissary purchases continue to include Ramen Noodle soups, chips, Raisin Bran cereal, and other items containing gluten. (Doc. 23-7, pp. 15–19.)

During the month of May 2020, Robinson's pattern of refusing to have his glucose levels checked continued, as well his practice of purchasing gluten-laden commissary products. (Doc. 23-6, pp. 1–4; Doc. 23-7, pp. 20–24.) On May 11, 2020, PA-C Miller saw Robinson at sick call. Robinson complained of chest tightness when bending forward. He denied other symptoms and "just wanted to get checked out" due to his diagnosis of diabetes and hypertension. (Doc. 23-5,

pp. 12–13.) Several days later, Robinson's Hemoglobin A1C result was high, indicating his diabetes was not controlled. (Doc. 23-3, p. 26.) On May 19, 2020, after expressing to staff that he was feeling aggressive and agitated, Robinson was temporarily placed in a Psychiatric Observation Cell ("POC") due to his impaired coping and risk of harm to others. (Doc. 23-5, p. 6.) Later that day, Plaintiff was released from the POC and moved to the Restricted Housing Unit ("RHU"). He did not report any medical complaints at the time. He did express being anxious and depressed over the loss of his Z-Code status. (Doc. 23-4, pp. 54–55.) Robinson remained in the RHU until late December 2020. Inmates confined in the RHU have limited commissary options. Once in the RHU, Robinson's food choices were limited to the meals he received from the prison kitchen. (Doc. 23-7, pp. 23–49.)

On May 25, 2020, PA-C Williams saw Robinson at sick call. He stated he was "diabetic and it is known that gluten and flour [are] not good for me so [he] need[ed] a special diet." (Doc. 23-4, p. 51.) He denied abdominal discomfort or pain upon eating gluten, and was advised there was no indication at the time for a gluten free diet. (*Id.*, p. 52.) On June 26, 2020, Plaintiff was seen on RHU medical rounds to have his medication renewed. He also requested a blood test for gluten enteropathy (celiac disease), asserting that certain foods were causing him acute abdominal pain and bloating. Dr. Peter Baddick renewed Robinson's chronic

constipation medication and ordered serum testing for gluten enteropathy. (Doc. 23-4, pp. 45–48.)

On July 22, 2020, Robinson underwent a series of blood work to test for gluten sensitivity. All tests were negative indicating he did not suffer from gluten sensitivity and/or celiac disease. (Doc. 23-3, pp. 28–29.) The same day, Robinson was sent a notice regarding his non-compliance with his diabetes medication. (Doc. 23-4, p. 40.) Robinson was sent a second notice regarding his diabetes medication non-compliance on August 5, 2020. (Doc. 23-4, p. 37.)

Robinson was seen in the Chronic Care Clinic for his diabetes, hypertension, and hyperlipidemia on August 12, 2020. Since his last visit, it was noted that he had lost 20 pounds, and his Hemoglobin A1C had improved. Plaintiff acknowledged that he had not taken his Metformin or high blood pressure medication in 30 days. After discussion with the treating physician, Robinson agreed to resume his Metformin. (Doc. 23-6, p. 18, 20–24; Doc. 23-4, p. 29.) Nonetheless, Robinson's compliance in taking his Metformin between August 12, 2020 and January 2021 was poor, with several months of only 22.1% compliance. (Doc. 23-6.)

PA-C Williams related the results of Robinson's celiac studies to Robinson on September 17, 2020. (Doc. 23-4, pp. 18–19.) PA-C Williams explained the results in detail and advised Robinson that his test results did not indicate celiac

disease or other form of gluten intolerance. (*Id*.) Later that day, Robinson received his commissary order. Again, although Robinson ordered several items containing gluten, they were not delivered as they were not permitted in the RHU. (Doc. 23-7, pp. 38–39.)

On September 21, 2020, Robinson was seen at sick call for complaints of difficulty moving his bowel and complaints of being "malnourished." (Doc. 23-4, pp. 15–16.) In October 2020, Robinson complained that his sugar dropped because he was not getting enough food. On October 17, 2020, Robinson submitted a sick call slip requesting a gluten-free diet. He acknowledged that he was not experiencing abdominal issues and PA-C Williams explained to Robinson that his labs indicated his diabetes was better controlled and that he did not have a gluten sensitivity, and there was no medical indication for a gluten-free diet. (Doc. 23-3, pp. 58–59.) Later the same day, Robinson filed Grievance 894850 where he states, "I discovered that diabetics automatically suffer[] from gluten sensitive enteropathy (celiac disease) … which diabetics suffer when they eat food that has gluten or any related proteins for their entire life" Doc. 23-8.

On October 21 and 29, 2020, Plaintiff received his commissary order minus several food items he requested (sour cream and onion chips, corn chips, and energy bars) as they were not permitted in the RHU. (Doc. 23-7, pp. 46–49.) On October 31, 2020, Dr. Baddick saw Robinson in the RHU and renewed his fiber

supplements as requested. Robinson did not express any other concerns. (Doc. 23-3, p. 56.) Robinson's compliance rate with his Metformin was 22.1% for the month of October. (Doc. 23-6, p. 31.)

In November, Robinson was more compliant with his daily glucose checks. (Doc. 23-6, p. 38.) Again, his Metformin compliance for the month was approximately 22.1%. (*Id*.) On November 2, 2020, PA-C Williams saw Robinson during RHU sick call. Robinson requested a 500-calorie snack bag because he claims he is losing weight in the RHU. Robinson denied any lightheadedness, dizziness, change in appetite, or bowel habits. PA-C Williams advised the change in environment and the lack of commissary items probably are the reasons for the weight loss and ordered monthly weight checks. (Doc. 23-3, pp. 54–55; Doc. 23-6, p. 46.) Robinson's weight in February 2020 was 264 pounds. He weighed 241.5 pounds on August 12, 2020. (Doc. 23-3, p. 5.) On November 2, 2020, he weighed 229.6 pounds. (*Id*., p. 19.)

On November 9, 2020, Robinson requested to be screened for colon and prostate cancer. PA-C Miller ordered labs, urinalysis, and gave Robinson three stool cards. (*Id*., pp. 49–53.) Dr. Baddick saw Robinson in the RHU on November 11, 2020. (*Id*., p. 46.) Robinson requested to be screened for prostate and colon cancer. Dr. Baddick noted Plaintiff already had hemoccult stool cards in his cell and labs were pending. Dr. Baddick also ordered Prostate Specific Antigen labs.

(*Id*., pp. 46–47.) Throughout the month of November 2020, Robinson's commissary orders contained requests for several snacks which included gluten but were not permitted in the RHU. (Doc. 23-7, pp. 47–49.)

In December 2020, Robinson was released from the RHU. On December 1, 2020, he received his commissary which included potato chips, corn chips, sour cream and onion chips, and energy bars. (*Id*., p. 50.) Robinson's daily glucose checks demonstrate an increase in his blood sugar that coincides with his release from the RHU and access to commissary. (Doc. 23-6, p. 46.) Robinson's compliance rate with his Metformin was 22.1%. (*Id*.)

Robinson did not file a reply in support of his motion for a temporary restraining order.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction maintains the *status quo* pending a final decision on the merits, whereas a "mandatory injunction" alters the status quo by granting injunctive relief before trial, and as such is appropriate only in extraordinary circumstances. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.") Mandatory

injunctions should be used sparingly. *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982). A request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

To obtain a preliminary injunction or temporary restraining order, the requesting party must show: (1) a reasonable likelihood of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of the preliminary injunction will not result in greater harm to the non-moving party; and (4) the public interest weighs in favor of granting the injunction. *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)); *see also* Fed. R. Civ. P. 65. If the first two "gateway factors" are satisfied, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested relief." *Reilly*, 858 F.3d at 179. If a party cannot establish both a likelihood of success on the merits and a probability of irreparable harm, the issuance of a preliminary injunction is inappropriate. (*Id.*)

## DISCUSSION

Judged against these standards, and without expressing an opinion on the merits of Robinson's other claims, the court concludes that Robinson is unlikely to be successful in his Eighth Amendment claim against any Defendant relative to their failure to provide him a gluten free-diet and he has not demonstrated that he would suffer irreparable injury absent the grant of injunctive relief.

To succeed on an Eighth Amendment claim of deliberate indifference, Robinson must demonstrate "(i) a serious medical need, and (ii) acts or omissions … that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "Only 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." *White v. Napoleon*, 897 F.2d 103, 108–09 (3d Cir. 1990). Medical negligence alone cannot result in an Eighth Amendment violation, nor can disagreements of the professional judgment of a health care who provides treatment. *Id.*

In this situation, it is clear from the record that Defendants have evaluated Robinson's concern of a gluten sensitivity due to his chronic diabetic condition, and they have ordered a variety of tests to evaluate him for celiac disease which were negative. Robinson has not provided any evidence that he has a gluten

sensitivity or that a gluten free diet was ever prescribed for him and ignored by the Defendants as he claims in his motion. Moreover, given Robinson's documented propensity to purchase and consume gluten commissary snacks on a regular basis, he has not shown that he will suffer irreparable harm if the requested injunctive relief–a gluten free diet–is denied.

Accordingly, his motion for injunctive relief will be denied.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 30, 2021